IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| REGINELLA CONSTRUCTION COMPANY, LTD., | ) ) ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 12-1047 |
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, | ) ) ) ) | |
| Defendant. | ) | |

## OPINION

**Mark R. Hornak, United States District Judge**

This is an action for damages initiated by a construction company against its former surety. On May 31, 2013, this Court dismissed plaintiff Reginella Construction Company Limited's ("Reginella") Complaint for failure to state a claim upon which relief could be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). See Reginella Constr. Co., Ltd. v. Travelers Cas. and Sur. Co. of America, --- F.Supp.2d ----, 2013 WL 2404140 (W.D.Pa. 2013) ("Opinion"). Specifically, the Court found that Reginella's fiduciary duty, intentional interference, and tort bad faith claims failed as a matter of law. Finding the claims to be legally rather than factually deficient, the Court determined that curative amendment was futile and dismissed the Complaint with prejudice.[1] In response to the dismissal of the Complaint, Reginella timely filed a Motion to Alter or Amend Judgment or, in the Alternative, for Leave to File an Amended Complaint (ECF No. 23) pursuant to Federal Rules of Civil Procedure 59(e)

---

[1] See Opinion at p. 25, citing Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252-53 (3d Cir. 2007) (in non-civil rights cases, district courts are not required to "sua sponte grant leave to amend before dismissing a complaint for failure to state a claim" pursuant to Rule 12(b)(6) and thus "need not worry about amendment if the plaintiff does not properly request it" prior to dismissal); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434-35 (3d Cir. 1997) (leave to amend need not be granted if the complaint as amended would still fail to state a claim that would entitle the plaintiff to relief).

and 15(a) on the basis that the Opinion was predicated on several errors of law. Defendant Travelers Casualty and Surety Company of America ("Travelers") contends that Reginella's arguments lack merit. (ECF No. 30.)

The Court held a hearing on Reginella's motion on August 21, 2013. For the reasons that follow, the Motion will be denied in its entirety.

## I. DISCUSSION

Reginella argues that the Court committed legal error in dismissing its fiduciary duty claims with prejudice, applying Pennsylvania's gist of the action doctrine to bar its interference and tort bad faith claims, and by construing the facts in the Complaint against Reginella rather than in its favor. In light of these alleged errors and emergence of certain "new facts," Reginella contends that the Court should grant it leave to file an Amended Complaint. The Court concludes that because no error of law occurred and because amendment would be futile and would reward undue delay, the Motion will be denied.

### A. Legal Error

In accordance with Federal Rule of Civil Procedure 59(e), a party may move to re-open a judgment no later than 28 days after its entry if at least one of the following grounds exists: "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent a manifest injustice." Burtch v. Milberg Factors, Inc., 662 F.3d 212, 230 (3d Cir. 2011). The determination of whether a judgment should be re-opened is left to the discretion of the district court. Cureton v. Nat. Collegiate Athletic Ass'n, 252 F.3d 267, 272 (3d Cir. 2001).

2

### 1. **Fiduciary-In-Fact Claims**

First, Reginella contends that because the Court held that the Complaint failed to plead the existence of a legally-recognized fiduciary-in-fact relationship, it was legal error for the Court to have dismissed the claims without granting leave to re-plead with new facts. However, the Court was not required to grant leave to re-plead because it determined that there was no set of facts under which Reginella, a corporation with 25 years of experience in the multi-million dollar public construction industry, with access to legal and financial advice, as well as the knowledge that Travelers was contractually permitted to take steps against its interests if certain contingencies arose as set forth in the various agreements it intelligently and willingly signed, could plead the existence of a fiduciary-in-fact relationship between itself and Travelers. Reginella urges the Court to reconsider this conclusion in light of the newly-asserted fact that "Travelers was a public company with publicly reported assets of $14 billion while [Reginella] was a small regional contractor with assets that were only a small fraction of Travelers' assets." (ECF No. 24 at p. 19.) The Court is not aware of any Pennsylvania case that has found a fiduciary-in-fact relationship between two incorporated entities based on the comparative size of their balance sheets, the parties cite to no such case, and this Court will not start down that road now.

Futility of amendment is a long-accepted basis for dismissing a Complaint with prejudice. Foman v. Davis, 371 U.S. 178, 182 (1962); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434-35 (3d Cir. 1997). Thus, the ruling that Reginella's fiduciary-in-fact claims are legally deficient will stand.

## 2. Tortious Interference and Bad Faith Claims

Next, Reginella argues that the Court committed legal error in sua sponte applying the gist of the action doctrine to bar its tortious interference and tort bad faith claims because: 1) the Court should have given Reginella an opportunity to brief the issue; 2) the applicability of the doctrine depends upon evidence adduced during discovery; and 3) in applying the doctrine, the Court did not construe the Complaint's facts in the light most favorable to Reginella as it was required to do on Rule 12(b)(6) review. These arguments misstate the law.

### a. Gist of the Action Doctrine

The purpose of the gist of the action doctrine is to maintain the conceptual separation between contract claims and tort claims, and in any case is a matter of law for the Court to decide. (See Opinion at pp. 22-23, citing cases.) "The doctrine deals less with specific enumerated 'duties' than with the parties' conduct as it relates to the contract and the tort alleged," such that where the tort claims are inextricably intertwined with the contract, and the source of the duties allegedly breached is the contract rather than the general duty of care imposed by law as a matter of social policy, the "gist of the action" is in contract. Pediatrix Screening, Inc. v. TeleChem Intern., Inc., 602 F.3d 541, 550 (3d Cir. 2010) (discussing eToll, Inc. v. Elias/Savion Advertising, Inc., 811 A.2d 10, 21 (Pa.Super. 2002)). Simply put, the doctrine asks, "What's this case really about?" Pediatrix, 602 F.3d at 550. To be clear, the doctrine only precludes the plaintiff from proceeding on a tort theory of liability. It does not, by its own operation, extinguish the alternative contract claim, and it is not an affirmative defense that the defendant bears the burden of proving.

The agreements in force between Travelers and Reginella make clear that source of the duties allegedly breached was in contract. See, e.g., Indemnity Agreement, ECF No. 7-1, at 1

(providing that the Indemnity Agreement was "an inducement to [Travelers]" in providing surety bonds to Reginella); ¶ 1 (defining "Default" as any of the following: "(a) a declaration of Contract default by any Obligee; (b) actual breach or abandonment of any Contract; (c) a breach of any provision of this Agreement; (d) failure to make payment of a properly due and owing bill in connection with any contract...[or] (i) any representation furnished to [Travelers] by or on behalf of any Indemnitor proving to have been materially false or misleading when made"); ¶ 6 (providing that as a remedy in the event of a default, Travelers "shall have a right in its sole discretion to: (a) take possession of the work under any Contract and to complete said Contract, or cause, or consent to, the completion thereof...(d) execute in the name of any Indemnitor, any instruments deemed necessary or desirable by [Travelers] to...take immediate possession of Contract funds whether earned or unearned...collect such sums as may be due Indemnitors and to endorse in the name of Indemnitors....require any Obligee to withhold payment of Contract funds unless and until [Travelers] consents to its release....Further, in the event of Default and upon demand Indemnitors shall direct that all payments, monies, and properties that are due or may become due on any Contract or contract be made payable to, and/or sent directly to, [Travelers]..."); see also MASD Performance Bond, ECF No. 7-2, at § 4 (in the event of Reginella's default, Travelers shall, "at its own expense," arrange for the completion of the construction project); MASD Payment Bond, ECF No. 7-3 at § 16 (requiring Travelers to pay all lawful claims of subcontractors); OTC Contract Bond, ECF No. 7-4 at 2 (providing that the bond "shall be for the benefit of any Subcontractor, Material Supplier, or laborer having a just claim, as well as for the Obligee herein"). These provisions were outlined and discussed at length in the Opinion.

Because it was facially apparent from the Complaint that Reginella's tortious interference[2] and tort bad faith[3] claims were re-casted breach of contract claims, the Court was obligated to apply the doctrine at the pleading stage to further Pennsylvania's interest in maintaining the separation between these well-settled forms of actions. Ray v. Kertes, 285 F.3d 287, 297 (3d Cir. 2002) ("sua sponte dismissal is inappropriate unless the basis is apparent from the face of the complaint"); see McPherson v. U.S., 392 Fed.Appx. 938, 942-43 (3d Cir. 2010) (when the plaintiff's own "statement of [the] claim shows that the cause of action" should be dismissed, sua sponte dismissal is appropriate, citing Ray); see also Rudder v. Williams, 666 F.3d 790, 796 (D.C.Cir. 2012) (same).

Although whether the gist of the action doctrine applies can, at times, require "a fact-intensive analysis as to the nature of the claim," Pediatrix, 602 F.3d at 551, which can be the case

---

[2] Under Pennsylvania law, "a party is liable for pecuniary loss due to tortious interference with a contractual relationship when the party intentionally and improperly interferes with the performance of a contract [] between another and a third person by inducing or otherwise causing the third person not to perform the contract." Empire Trucking Co., Inc. v. Reading Anthracite Coal Co., --- A.3d ----, 2013 WL 3129493, at *8 (Pa.Super. 2013). The nature of the alleged tortfeasing actor's conduct, motive, and interests of the others with which the actor's conduct interferes, the interests sought to be advanced by the actor, as well as the relations between the parties, determine whether the defendant's actions were improper, id at *9, and a cause of action lies only when the alleged tortfeasor interferes with a relationship where it is not in privity of contract with the other actors. See, e.g., Daniel Adams Assoc., Inc. v. Rimbach Pub., Inc., 519 A.2d 997, 1000 (Pa.Super. 1987) (citing Adler, Barish, Daniels, Levin and Creskoff v. Epstein, 393 A.2d 1175 (Pa. 1978)). As the Opinion set forth, because the conduct Reginella described as "tortious interference" can be traced directly back to the actions that Travelers was contractually entitled to pursue under the Indemnity Agreement, and because Travelers owed contractual duties to the subcontractors and project owners as a result of the surety bonds, all of which were tied to the construction contracts, no cause of action for tortious interference could lie and any recovery must be pursued in contract for a breach of such obligations.

[3] In Pennsylvania, the tort of bad faith is available only to insureds pursuing actions against an insurer. See 42 Pa.C.S.A. § 8371; see generally Birth Center v. St. Paul Companies, Inc., 787 A.2d 376 (Pa. 2001). The statutory scheme and wealth of case law is clear that tort bad faith actions must be brought pursuant to the Bad Faith Statute, § 8371, and that despite being remedial in nature, section 8371 applies only to insurers. See Toy v. Metropolitan Life Ins. Co., 928 A.2d 186, 192 (Pa. 2007); Birth Center, 787 A.2d at 390 (Nigro, J., concurring); see also Stephen S. Ashley, Bad Faith Actions: Liability & Damages § 1:2 (2012) ("the attempt to extend the bad faith tort beyond insurance has fizzled."). Moreover, even if there was, as Reginella argues, a general tort bad faith claim available at common law, allowing a principal to pursue such a claim against a surety would conflict with the scheme envisaged by section 8371 and contradict the Pennsylvania case law that has repeatedly limited the tort of bad faith to the insurance context. Thus, the Opinion reasoned that there is no common law bad faith claim available to a principal on a surety bond under Pennsylvania law, and it further held that even if there were, under the circumstances of this case, such a claim was barred by the gist of the action doctrine.

with fraud-based claims like misrepresentation and fraudulent inducement, there is no bright-line rule to this effect and there need not be one. Our Court of Appeals has recognized this and permits district courts to apply the doctrine at the pleading stage to dismiss what are in reality contract claims, with prejudice. See, e.g., Jones v. ABN Amro Mortg. Group, Inc., 606 F.3d 119 (3d Cir. 2010); Bealer v. Mutual Fire, Marine and Inland Ins. Co., 242 Fed.Appx. 802 (3d Cir. 2007); cf. Baker v. Family Credit Couns. Corp., 440 F.Supp.2d 392, 419 (E.D.Pa. 2006) (Complaint's allegations that defendants targeted unsophisticated consumers struggling with financial difficulties by obtaining and keeping service fees and monthly payments under false pretenses were sufficiently distinct from a breach of contract claim to withstand the gist of the action doctrine at the pleading stage); see also ClinMicro Immunology Ctr., LLC v. PrimeMed, P.C., 2013 WL 3776264 (M.D.Pa. Jul. 17, 2013); Always in Service, Inc., v. Supermedia Services-East, Inc., 2012 WL 717233 (E.D.Pa. Mar. 5, 2012) (both refusing to apply the gist of the action doctrine to bar fraud-based tort claims on a motion to dismiss). Thus, the Court did not commit legal error in applying the gist of the action sua sponte at the pleading stage to dismiss the Complaint with prejudice.

### b. Rule 12(b)(6) Standard of Review

Finally, Reginella's argument that the Court's application of the gist of the action doctrine was based on a misapplication of Rule 12(b)(6) also misses the mark. While the Court is required to "accept as true the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor," it was not required to accept the Plaintiff's editorial characterization of its facts at face value. W. Penn. Allegheny Health Sys., Inc. v. UPMC, 627 F.3d 85, 91 (3d Cir. 2010); Santiago v. Warminster Twp., 629 F.3d 121, 128-30 (3d Cir. 2010) (legal conclusions and conclusory allegations must be disregarded). Similarly, the Court's

7

obligation to draw inferences in the plaintiff's favor extends only to those inferences that are *reasonable*. To be more specific, the Court may draw inferences only to the extent that they are supported by or are consistent with the well-pleaded factual allegations; where the plaintiff's inferences would contradict the well-pleaded factual allegations, the Court cannot accept them. See Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1410 (3d Cir. 1991) (court "must accept as true all…reasonable inferences that *can* be drawn from" the well-pleaded facts) (emphasis added). If the Court were required to accept contradictory inferences and conclusory allegations as well-pleaded facts, then Rule 12(b)(6) review would be nothing more than the Court alchemizing legally insufficient statements into a plausible cause of action. Such a standard of review is akin to no review at all, and most importantly, is not the law.

Reginella's well-pleaded facts establish the following: (1) Reginella entered into construction contracts with the Ohio Turnpike Commission ("OTC") and the Moon Area School District ("MASD"), both of which required Reginella to purchase surety bonds to guarantee the performance of the work and payment of subcontractors and suppliers (ECF No. 1 at ¶¶ 11-14, 41-42); (2) regarding the OTC project, under the express terms of the construction contract, the surety bond became part of the construction contract (id. at ¶ 12); (3) Reginella ended its active business relationship with Travelers while the OTC and MASD projects were under way, although the previous bonds remained in place (id. at ¶ 10); (4) in early 2012, in response to a claim for payment filed by a subcontractor on the OTC project, Reginella requested that Travelers, in accordance with the OTC bond, issue a lien-over bond, which Travelers refused to do, the end result being that OTC fired Reginella on May 22, 2012 (id. at ¶¶ 19, 22, 24, 26, 29, 30, 33, 38); (5) in March 2012, following the subcontractors' claims for payment on the OTC project, Travelers requested information from Reginella regarding its finances (id. at ¶ 31); (6)

8

on April 26, 2012, Travelers sent a letter to the MASD demanding payment of "the entire amount of the contract funds remaining in the custody of" the MASD (id. at ¶ 44); (7) in response to this letter, the MASD declined to make any further payment to Reginella, which prompted Reginella to advise Travelers that if the MASD did not release payment, the project would be "wreck[ed]" (id at ¶¶ 44, 46); (8) Travelers secretly met with the MASD subcontractors and told them to slow down and stop working and advised them that Reginella was going to be fired from the project (id. at ¶¶ 57, 61); (9) after a month passed where no payments flowed between any of the parties to the construction and surety contracts, Reginella terminated its involvement in the MASD project "due to MASD's material breaches of the Moon Contract" (id at ¶¶ 53, 54); and (10) Travelers's conduct cost Reginella approximately $15.6 million and effectively put it out of business (id. at ¶ 66).

The Complaint further alleges that Travelers's conduct in refusing to issue the lien-over bonds, requesting Reginella's financial information, contacting the MASD, and meeting with the subcontractors was "entirely without justification," "arbitrary," "unreasonable," "capricious," "vexatious," "a breach of fiduciary duty," "self-serving," "wrongful," "improper," "wanton," "outrageous," "in bad faith," and "shocking to the conscience." (See, e.g., id. at ¶¶ 3, 31, 39, 55, 57, 62, 66; see also ECF No. 14 at p.27, adding "overmastering.") These are not well-pleaded factual allegations, but conclusory allegations and adjective-laden editorial embellishments that the Court was obligated to cast aside.

However, even accepting as true the well-pleaded factual allegations and supported inferences, under the terms of the surety bonds (which were referenced in the Complaint) and the Indemnity Agreement (which was necessarily incorporated into the Complaint by virtue of Reginella's predicating its fiduciary duty and tort claims on the bonds the Indemnity Agreement

9

supported), Travelers had the right to take any number of actions vis-à-vis Reginella, including excision from the project(s), as long as it did so in a manner consistent with the Indemnity Agreement and the bonds. This excision, regardless of how "arbitrary," is exactly what Reginella alleges that Travelers did. At argument, Reginella repeatedly pointed to Travelers's April 26, 2012 letter and alleged "secret meetings" between Travelers and the subcontractors as "facts" which give rise to tort liability separate and independent from any contract that may have existed between the parties. As the Opinion discussed at length, this position is unsupportable as a matter of law: under the terms of the Indemnity Agreement, if Reginella were to be declared in default by either a project owner or by Travelers, Travelers would have the power to "in its sole discretion" to "take possession of the work" and/or "require any [project owner] to withhold payment of Contract funds." (ECF No. 7, Ex. 1 at p. 2.) Similarly, the surety bonds required Travelers to step in to guarantee the performance of the construction and pay the subcontractors if Reginella defaulted on its obligations. (Id. at Ex. 2-4.)

Thus, what this case is "really about" is whether Travelers acted improperly in the performance of its contractual duties as to Reginella and in its exercise of the rights it was granted by the applicable contracts between these parties. See Pediatrix, 602 F.3d at 550; eToll, 811 A.2d at 14. Despite Reginella's attempts to erect an impervious membrane between its construction contracts with the project owners and its bonding relationship with Travelers, the reality is that Reginella, Travelers, and the project owners were connected to each other by a web of interrelated agreements: the Indemnity Agreement, the surety bonds, and the construction contracts. Without the Indemnity Agreement, the surety bonds could not exist, and without the surety bonds, the construction contracts could not exist. This arrangement is par for the course in the public construction industry. See Philip L. Bruner and Patrick J. O'Connor, Jr., 3 BRUNER &

10

O'CONNOR ON CONSTRUCTION LAW §§ 10:102, 12:7 (2012). While the Court owes Reginella a degree of deference in construing the Complaint, it cannot allow Reginella to use its asserted facts, well-pleaded or otherwise, to leverage a breach of contract lawsuit into a tort suit that is not otherwise cognizable. To hold otherwise would permit it to pursue a cause of action that has no basis in law and would ignore what this case is really about.

### c. The Contractual Nature of Suretyship

Regarding the Court's review of the Indemnity Agreement at the pleading stage, Reginella has twice made reference to U.S. Fidelity & Guar. Co. v. Feibus, 15 F.Supp.2d 579 (M.D.Pa. 1998), for the proposition that acts of bad faith by a surety render a general indemnity agreement between a principal and a surety unenforceable, thereby obviating the contractual basis of the suit. Reginella relies on Feibus here in arguing that it was legal error for the Court to consider the Indemnity Agreement in ruling on Travelers's motion to dismiss. The Court rejects Reginella's reading and proposed application of Feibus. In Feibus, which by its own terms was a breach of contract action, the surety sought indemnification from the principal pursuant to a general indemnity agreement for claims the surety paid on the principal's behalf. 15 F.Supp.2d at 580-82. The principal argued that the payments were made in bad faith and challenged the surety's right to seek indemnification under the agreement, which the court rightly noted is a defense to the principal's obligation to indemnify the surety. Id. at 585; Int. Diamond Importers, Ltd. v. Singularity Clark, L.P., 40 A.3d 1261, 1271 (Pa.Super. 2012) (material breach relieves the non-breaching party of its obligation to perform).

In this action, Travelers does not seek indemnification from Reginella; to the contrary, the Complaint alleges that Travelers never made any payments on Reginella's behalf and *committed a tort* in failing to do so. This issue was not before the court in Feibus. Nothing in

11

Feibus says that a surety's bad-faith payments eliminates the contractual basis of the suit or gives rise to tort liability, and this Court questions the extent to which Feibus's description of a surety's bad-faith payments as a "defense" to a principal's obligation to indemnify the surety can be extrapolated to support such propositions. 15 F.Supp.2d at 585. On this basis, at least, Feibus is not instructive.

However, Feibus makes several observations about the relationship between sureties and principals that highlight the legal insufficiency of Reginella's fiduciary duty and tort claims. First, the court noted that sureties enjoy considerable discretion in settling claims "because of the important function they serve in the construction industry," and that in light of this, other courts "have [] upheld a surety's right to indemnification for claims paid to *protect its own interests*, as long as the payments were made in good faith." 15 F.Supp.2d at 585-86 (citing cases) (emphasis added). These observations, which are further echoed in the economics underlying the principal/surety relationship, undermine the notion that a surety could ever assume a fiduciary-in-fact position towards its principal, a sophisticated commercial entity who is aware at the outset that the surety is contractually vested with the right to take steps against its (the principal's) interests if certain contingencies occur. Second, Feibus was a breach of contract action. Without the general indemnity agreement (as well as the resulting bond agreements), the surety and principal had no relationship and no dispute to adjudicate in court; absent the agreements, the parties were strangers.

Feibus' observations about the contractual nature of suretyship are squarely on point here. In its Opinion in this case, this Court limited its consideration of the indemnity and bond agreements to determining the extent to which contracts existed between the parties and whether the misconduct alleged grew out of the rights and duties set forth in those agreements. This was

required at the pleading stage because it was essential to determining the legal sufficiency of the claims. If Reginella could dispute the authenticity of the Indemnity Agreement (which it does not) or could argue that the agreement is unconscionable as a matter of public policy and thus unenforceable as a matter of law (which it cannot), the analysis might be different. However, these arguments were not made previously and are not being made now.

Reginella advances a handful of similar arguments in support of its motion that the judgment should be re-visited, all of which the Court has considered and determines were adequately and correctly addressed in the Opinion.

## B. Leave to Amend

Regardless of how the Court rules on the Rule 59(e) motion, Reginella requests leave to file an Amended Complaint in accordance with Federal Rule of Civil Procedure 15. This Amended Complaint differs from the original Complaint in two respects: first, it contains factually-enhanced versions of the six counts that the Court previously dismissed on the basis that the law did not support the claims; second, it contains four (4) new counts alleging intentional misrepresentation, breach of the surety bonds, intentional interference with Reginella's business relationship with Star Insurance Company, and intentional interference with prospective contractual relations. (ECF No. 24 Ex. 1, at ¶¶ 129-203.)

Prior to the entry of judgment, "[t]he court should freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a); Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252-53 (3d Cir. 2007) (discussing Kelly v. Del. River Joint Comm'n, 187 F.2d 93, 95 (3d Cir. 1951)). When a defendant responds to a complaint with a motion to dismiss rather than an answer, the rule in the Third Circuit is that the plaintiff be given "one amendment as a matter of right up to the point at which the district court grants the motion to dismiss and

13

enters final judgment." Fletcher-Harlee, 482 F.3d at 252. It is the plaintiff's responsibility to exercise this right prior to the court's ruling on the motion to dismiss. Id. Once the court enters judgment, the plaintiff's amendment as of right expires, and leave to amend may be obtained only on a Rule 59(e) or Rule 60(b) motion to re-visit the judgment. Id. The granting or denial of leave to amend is within the discretion of the district court. Foman, 371 U.S. at 182.

When a party moves to amend its complaint simultaneously with a motion to amend a final judgment pursuant to Rule 59, "the liberality of Rule 15(a) is no longer applicable." Burtch, 662 F.3d at 230. Instead, "the Rule 15 and 59 inquiries turn on the same factors," with a view to "favoring finality of judgments and the expeditious termination of litigation." Id. at 231 (internal marks and citations omitted). At this procedural juncture, the district court may deny the request for leave if it is tainted by undue delay, bad faith, prejudice to the opposing party, or futility. Cureton, 252 F.3d at 273. While these factors tend to overlap conceptually, they can be distinguished as follows: (1) undue delay involves instances where a movant had previous opportunities to amend a complaint before judgment, but did not; (2) bad faith entails "gamesmanship" and "wait-and-see" tactics that undermine the integrity of the truth-seeking process; (3) prejudice to the opposing party involves hardship to the defendant, and focuses on the burdens imposed by additional discovery, cost, and preparation to defend against new facts or legal theories; and (4) futility is invoked where the complaint as amended would fail to state a cause of action, which entails the same standard of legal sufficiency as Rule 12(b)(6). Cureton, 252 F.3d at 273; Burlington Coat Factory, 114 F.3d at 1434-35; Payne v. DeLuca, 2006 WL 3590014, at *14-16 (W.D.Pa. Dec. 11, 2006) (Hardiman, J.). Consistent with these principles, a party cannot, on a Rule 59(e) motion, file an amended complaint that contains new facts and legal arguments that could have been raised before the original complaint was dismissed. In re

Adams Golf, Inc. Sec. Litig., 381 F.3d 267, 280-81 (3d Cir. 2004); Roger Miller Music, Inc. v. Sony/ATV Publishing, LLC, 477 F.3d 383, 395 (6th Cir. 2007); Rothwell Cotton Co. v. Rosenthal & Co., 827 F.2d 246, 251 (7th Cir. 1987).

For the reasons discussed at length above, the Court declines to grant Reginella leave to file its Amended Complaint. Amendment under these circumstances would be futile and would reward undue delay. There is no set of facts under which Reginella can prevail on its fiduciary duty, tortious interference, or tort bad faith claims. Furthermore, Reginella is presently pursuing counterclaims against Travelers in the Allegheny County Court of Common Pleas, Travelers Cas. and Sur. Co. of America v. Reginella Constr. Co., Ltd., et al., GD No. 12-012196, for Travelers' alleged breaches of the OTC and MASD bonds as well as the Indemnity Agreement and the implied covenant of good faith and fair dealing in the Indemnity Agreement. (ECF No. 29-3 at pp. 40, 42, 46.) This Court will not re-open its judgment solely for the purpose of giving Reginella a second and parallel forum to litigate claims that are already well underway in state court. Had Reginella included breach of contract claims in its original Complaint, the Court would have had a higher obligation to consider exercising jurisdiction over them notwithstanding the fact that they are also proceeding in state court; now that judgment has been entered, any such obligation has evaporated. Burtch, 662 F.3d at 231.

It also bears mentioning that Reginella's pursuit of contract counterclaims in state court and tort claims in this Court violates Pennsylvania's exhortation that "all claims for injuries resulting from a single transaction or occurrence [are] to be asserted in a single action." Kershak v. Pennsylvania Hosp., 1995 WL 50056, at *2 (E.D.Pa. Feb. 3, 1995) (citing Marinari v. Asbestos Corp., Ltd., 612 A.2d 1021, 1027 (Pa.Super. 1992), overruled on other grounds, Giffear v. Johns-Manville Corp., 632 A.2d 880 (Pa.Super. 1993)). This holds true even in light of the

15

fact that all counterclaims in Pennsylvania are permissive: "once the defendant asserts a counterclaim, he becomes a plaintiff and must join all counterclaims which arise from the same 'transaction or occurrence' upon which the counterclaim is based or such claims shall be deemed waived." Carringer v. Taylor, 586 A.2d 928, 932 (Pa.Super. 1990); Bender's Floor Covering Co. v. Gardner, 564 A.2d 518, 520 (Pa.Super. 1989) ("[u]nder Pennsylvania law, counterclaims are *permissive*") (emphasis in original) (citing Pa.R.Civ.P. 1031). Despite Reginella's position at argument that this Court was its true forum of choice, Pennsylvania law, which provides the rules of decision in this case, counsels otherwise.

With respect to Reginella's proposed new Count regarding Travelers's alleged interference with its relationship with Star Insurance Company, Reginella was recently the defendant in action initiated by Star in this judicial district, Star Ins. Co. v. Reginella Constr. Co., Ltd., Civ. No. 12-1195 (W.D.Pa. filed Aug. 20, 2012), which was dismissed with prejudice on April 18, 2013. In its Amended Complaint, Reginella alleges that Star's lawsuit was prompted by "Travelers' communication of false information to Star," the purpose of which was to "induce Star to take legal and other action against [Reginella]." (ECF No. 24-1 at ¶ 189.) Reginella was obligated to amend its Complaint when it first knew about the possible existence of its additional counts against Travelers, Cureton, 252 F.3d at 273, which, given the date of the dismissal of Star's case against Reginella, obviously occurred well in advance of this Court dismissal of Reginella's Complaint in this lawsuit on May 31, 2013. The same can be said for Reginella's obligations to amend its Complaint to include its intentional misrepresentation and prospective contractual relations claims, both of which are based on conduct that was well-known to Reginella when its Complaint was dismissed. (See ECF No. 24-1 at ¶¶ 129-141, 198-203.) Leave to file the Amended Complaint is not warranted and will therefore not be granted.

## II. CONCLUSION

For the reasons discussed at length above, Reginella's Motion to Alter or Amend Judgment or, in the Alternative, for Leave to File an Amended Complaint pursuant to Federal Rules of Civil Procedure 59(e) and 15(a) (ECF No. 23) will be denied. An appropriate Order follows.

BY THE COURT:

Mark R. Hornak
United States District Judge

Dated: September 5th, 2013
cc: All counsel of record